**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KIOMY ENCARNACION,<br>Individually and<br>On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WORKERS CREDIT UNION, DOES 1<br>Through 100,<br><br>Defendants, | 4:21-cv-40077-MRG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS OF UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

*Page*

I. SUMMARY ..... 8

II. THE HISTORY OF THIS CASE ..... 11

III. ANALYSIS OF THE DATA ..... 11

IV. TERMS OF THE SETTLEMENT ..... 12

**A.** Class Definition ..... 12

**B.** The Settlement Amount ..... 12

**C.** Payments to Class Members ..... 13

**D.** *Cy Pres* Distribution ..... 13

V. ARGUMENT ..... 13

A. The Legal Standards for Final Approval of a Class Action Are All Met ..... 13

**1.** The Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement ..... 14

**2.** The Settlement Was Negotiated at Arm's Length ..... 16

**3.** Lack of Opt-outs by Class Members ..... 17

**4.** The Other Factors Set Forth Rule 23(e)(2) ..... 17

B. The Proposed Settlement Class Should Be Finally Certified ..... 18

**1.** The Requirement of Numerosity Is Satisfied ..... 19

**2.** The Requirement of Commonality Is Satisfied ..... 19

**3.** The Requirement of Typicality Is Satisfied ..... 20

**4.** The Requirement of Adequate Representation Is Satisfied ..... 20

**5.** The Proposed Settlement Class also Satisfies Rule 23(b)(3) ..... 21

**TABLE OF CONTENTS (cont.)**

*Page*

a. Common Questions of Law and Fact Predominate .......................... 22

b. This Class Action Is the Superior Method of Adjudication. ............ 22

VI. FEES, COSTS, AND SERVICE AWARD .......................................... 22

A. Plaintiff's Counsel's Application for Fees, Costs, and Expenses ............ 22

B. Plaintiff's Counsel Are Entitled to an Award of Attorney's Fees from the Common Fund .......................................................................... 23

C. Plaintiff's Counsel Are Entitled to a Reimbursement of Expenses from the Common Fund .......................................................................... 26

D. The Class Representative Is Entitled to a Service Award from the Common Fund.. 26

VII. CONCLUSION .......................................................................... 27

## TABLE OF AUTHORITIES

*Page*

Cases

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)........................................................................................ 12, 14, 15

*Behrens v. Wometco Enters*., Inc.,
118 F.R.D. 534 (S.D. Fla. 1988)........................................................................................ 8

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015)........................................................................ 10, 16

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999)................................................................................ 10

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996)........................................................................................ 9

*Cornwell v. Credit Suisse Grp.*,
No. 08-cv-03758 (VM), 2011 WL 13263367 (S.D.N.Y. July 20, 2011)........................... 19

*Couture v. Mammoth Groceries, Inc.*,
117 N.H. 294 (1977)...................................................................................................... 17

*Curtis v. Scholarship Storage Inc.*,
No. 2:14-cv-303-NT, 2016 WL 3072247 (D. Me. May 31, 2016)................................... 17

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011)........................................................................... 19

*Detroit v. Grinnell Corp*.,
495 F.2d 448 (2d Cir. 1974)............................................................................................ 7

*Duprey v. Connecticut Dept. of Motor Vehicles*,
191 F.R.D. 329 (D. Conn. 2000).................................................................................... 13

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir.2009).......................................................................................... 12

*Gates v. Rohm & Haas Co*.,
248 F.R.D. 434 (E.D. Pa. 2008)...................................................................................... 9

*George v. Nat'l Water Main Cleaning Co.*,
286 F.R.D. 168 (D. Mass. 2012).................................................................................... 12

**TABLE OF AUTHORITIES (cont.)**

*Page*

*Gonzalez v. XPO Last Mile, Inc.*,
579 F. Supp. 3d 252 (D. Mass. 2022) .......... 13

*Grenier v. Granite State Credit Union*,
344 F.R.D. 356 (D.N.H. 2023) .......... 20

*Health Benefits Fund v. First Databank, Inc.*,
602 F. Supp. 2d 277 (D. Mass 2009) .......... 7

*Hill v. State Street Corp.*,
2015 WL 127728 (D. Mass. 2015) .......... 6, 7

*In re AMICAS, Inc. S'holder Litig.*,
27 Mass.L.Rptr. 568, 2010 WL 5557444 (Mass. Super. Ct. Dec. 6, 2010) .......... 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) .......... 10

*In re Delphi Corp. Sec., Derivative & "ER*ISA" Litig.,
248 F.R.D. 483 (E.D. Mich. 2008) .......... 8

*In re Fid./Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) .......... 16

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .......... 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) .......... 11

*In re Prograf Antitrust Litig.*,
No. 1:11-MD-02242-RWZ, 2015 WL 13908415 (D. Mass. May 20, 2015) .......... 18

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .......... 11, 18

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) .......... 18

*In re Scott Paper Co. Sec. Litig.*,
142 F.R.D. 611 (E.D. Pa. 1992) .......... 13

**TABLE OF AUTHORITIES (cont.)**

*Page*

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........ 19

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Litig.*,
56 F.3d 295 (1st Cir. 1995) ........ 16, 17, 18

*In re TJX Companies Retail Sec. Breach Litig.*,
584 F. Supp. 2d 395 (D. Mass. 2008) ........ 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ........ 18

*In re Vitamins Antitrust Litig.*,
No. 99-197 TFH, 2000 WL 1737867 ........ 11

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015) ........ 18

*Kondash v. Citizens Bank, Nat'l Ass'n,*
No. 18-CV-00288-WES-LDA, 2020 WL 7641785 (D.R.I. Dec. 23, 2020) ........ 17

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-CV-10219, 2017 WL 5900058 (D. Mass. Nov. 28, 2017) ........ 18

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 ........ 9

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ........ 9

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
582 F.3d 30 (1st Cir. 2009) ........ 6, 7

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
No. 1:08- cv-10783-LAP, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) ........ 18

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
No. CIV.A. 05-11148PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........ 19

*O'Connor v. Oakhurst,*
2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) ........ 17

**TABLE OF AUTHORITIES (cont.)**

*Page*

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 21 (D. Mass. 2003) ........................................ 13

*Purinton v. Moody's Co-Worker Owned, Inc.*,
No. 2:20-CV-00296-JAW, 2023 WL 167560 (D. Me. Jan. 12, 2023) ........................................ 17

*Richard v. Glens Falls Nat'l Bank*,
No. 120CV734BKSDJS, 2022 WL 3286551 (N.D.N.Y. July 22, 2022) ........................................ 20

*Roberts v. TJX Companies, Inc.*,
2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................ 17

*Robinson v. Nat'l Student Clearinghouse*,
14 F.4th 56 (1st Cir. 2021) ........................................ 9

*Scovil v. FedEx Ground Package Sys., Inc.*,
2014 WL 1057079 (D. Me. Mar. 14, 2014) ........................................ 17

*Singleton v. AT&T Mobility Servs., LLC*,
146 F. Supp. 3d 258 (D. Mass. 2015) ........................................ 6

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir.2001) ........................................ 12

*Sylvester v. Cigna Corp.*,
401 F. Supp. 2d 147 (D. Me. 2005) ........................................ 18

*Tardiff v. Knox Cty.*,
365 F.3d 1 (1st Cir. 2004) ........................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ........................................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................ 18

*Waste Mgt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) ........................................ 15

*Weiss v. York Hospital*,
745 F.2d 786 (3d Cir.1984) ........................................ 13

**TABLE OF AUTHORITIES (cont.)**

*Page*

Rules

Fed. R. Civ. P. 23 ........ *passim*

Other Authorities

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ........ 9

1 Newberg on Class Actions § 3.13, at 3- 76 (3d ed. 1992) ........ 13

5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) ........ 20

## MEMORANDUM

Plaintiffs respectfully submit this memorandum of law in support of their unopposed motion for final approval of the proposed class action settlement and awarding attorney's fees and cost.

## I. SUMMARY

This is a putative class action in which Plaintiff Kiomy Encarnacion alleges that Workers Credit Union ("Workers" or "Defendant") charged overdraft and Non-Sufficient Funds ("NSF" or "Retry Fees") which were not allowed under its account agreement. Workers disputes this.

On March 31, 2024, this Court granted preliminary approval to the proposed settlement, finding preliminarily that the proposed class met all of the requirements for certification under the Federal Rules of Civil Procedure, that the proposed settlement fund of $437,500 fell within the range of reasonableness for potential final approval, and that the settlement proposal appeared to be fair, adequate, and reasonable. ECF No. 67.

The Court appointed KCC LLC[1] to administer the settlement, provisionally appointed McCune Law Group and Shaheen & Gordon P.A. as settlement class counsel, and plaintiff Kiomy Encarnacion as settlement class representative. ECF No. 67.

The Court found that the notices complied in substance with the requirements of the Federal Rules of Civil Procedure, and directed class counsel to cause the Settlement Administrator to provide notice and establish a settlement website. ECF No. 67.

The parties can now report that the notice program approved by the Court has been very successful. Specifically, as evidenced by the contemporaneously filed declaration of Annette Kashkarian of Verita, the court-appointed claims administrator, Verita mailed or emailed notice of this proposed class action settlement to 6871 Class Members in two separate tranches.

[1] Following Preliminary Approval, KCC changed its name to Verita, and will be referred to as such herein.

First, on April 30, 2024, Verita sent E-Mail Notice to 5900 Class Members. Declaration of Annette Kashkarian hereinafter "Verita Decl." at ¶ 9. At the same time, Verita caused the Post Card Notice to be mailed to the 834 Class Members for which there was no available email address. Verita Decl. at ¶ 7. Of the 5900 claimants that were sent e-mail notice on April 30, 2024, only 324 bounced back. (Verita Decl. at ¶ 10.) On May 17, 2024, Verita sent Postcard Notice to these class members. (Verita Decl. at ¶ 11.)

Second, another tranche of notices was sent to Class Members after the parties determined that there were 249 additional current or former Workers Credit Union members who qualified as Class Members who had not been identified in the initial Class list (the "Later Identified Class Members"). (Vertia Decl. at ¶ 4.) On August 26, 2024, the Court directed notice be sent to the Later Identified Class Members and set September 12, 2024, as the new date for the Final Approval Hearing. ECF 78.

On August 29, 2024, Verita sent E-Mail notice to 108 Later Identified Class Members. Verita Decl. at ¶11[2]. This E-mail Notice was identical to the initial notice except it set a deadline of September 6, 2024, to object or opt out of the settlement and identifying September 12 as the date of the Final Approval Hearing *Id.* Also on August 29, 2024, Verita sent Postcard Notice to the 29 Later Identified Class Members for which an email address could not be identified. (Decl. of AK at ¶11.) This Postcard Notice was identical to the initial postcard notice except it set a deadline of September 6, 2024, to object or opt out of the settlement and identified September 12, 2024, as date of the Final Approval Hearing. *Id.* at ¶11.

For the initial notice, requests for exclusion were required to be postmarked by May 30, 2024, and objections were required to be postmarked by June 19, 2024. As of August 29, 2024,

[2] 112 of the Later Identified Class Members were sent notice as part of the initial notice program and therefore did not require notice. AK Decl. at ¶ 6.

Verita has not received any objections or requests for exclusion. (Verita Decl. at ¶¶ 16-17).

With respect to the Later Identified Class Members, requests for exclusion and/or objection were required to be postmarked by September 6, 2024. As of August 30, 2024, Verita has received no objections or requests for exclusion from this group. *Id.*

In sum, the Proposed settlement is an excellent result for Class Members, and Class Members, reactions to it to date have been very favorable.

Distribution of the settlement will greatly benefit Class Members. All Class Members who have not opted out of the settlement will receive a direct distribution without having to make an affirmative claim. (SA at ¶ 63(d), attached as Exhibit 1 to the Kusel Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval, ECF 59.) Class Members who are current Workers CU members will be paid a direct deposit into their accounts, or they will be mailed a check if they no longer have a Workers CU account. *Id.* Further the parties propose that any money remaining after the distribution process be awarded *cy pres* to United Way. (SA at ¶¶ 63, 64, Kusel Decl. at 32.)

Accordingly, Plaintiff hereby moves for an order approving the settlement and certifying the provisionally approved Class. Plaintiffs seek an order (1) appointing McCune Law Group, APC and Shaheen & Gordon, P.A. as Class Counsel; (2) appointing named plaintiff Kiomy Encarnacion as class representative; (3) approving Plaintiff's notice program with a ruling that it constitutes the best notice practicable under the circumstances and satisfies Rule 23, due process and all other applicable law; (4) approving Class Counsel's reasonable attorneys' fees in the amount of one third of the settlement, as well as reasonable costs; (5) approving a service award to plaintiff Kiomy Encarnacion in the amount of $2500.00; (6) approving Verita as the caims administrator; and (7) approving a *cy pres* distribution to the United Way.

## II. THE HISTORY OF THIS CASE

On July 23, 2021, Plaintiff Kiomy Encarnacion filed the putative class action complaint entitled *Encarnacion v. Workers Credit Union*, *Individually and on Behalf of All Others Similarly Situated v. Workers Credit Union and DOES 1 Through 100* in the United States District Court, District of Massachusetts, Case No. 4:21-cv-40077-MRG, seeking among other things damages, restitution and declaratory relief arising out from the allegedly unfair and unconscionable assessment and collection of Retry overdraft fees in violation of Workers contracts with its credit union members. ECF No.1. The complaint alleged claims for Breach of the Account Agreement, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment/Restitution, and Money Had and Received. *Id.*

On September 17, 2021, Workers filed a Motion to Dismiss for Failure to State a Claim. ECF No. 8. After full briefing, on April 14, 2022, the Court denied Defendant's Motion to Dismiss for Failure to State a Claim. ECF No. 20. On April 28, 2022, Defendant filed its Answer to the Complaint. ECF No. 35.

After substantial law and motion practice and significant formal discovery, the parties reached a proposed settlement of this matter for $437,500. (*See* Settlement Agreement ("SA") attached as Exhibit 1 to the Declaration of Elaine S. Kusel ("Kusel Decl."); ECF. No. 59.)

## III. ANALYSIS OF THE DATA

Prior to reaching the proposed Settlement, Plaintiff's database expert, Arthur Olsen, performed an analysis of Defendant's actual data pertaining to NSF fees and overdraft fees assessed on class members. (Declaration of Arthur Olsen in Support of Preliminary Approval ("Olsen Decl.") ¶¶ 6-9.)

The data that was available to Mr. Olsen when performing his preliminary analysis included detail information on certain accounts regarding all NSF fees assessed during six sample months,

aggregate fee information for the period July 1, 2015, through September 30, 2021, and Call Reports filed by Workers for the period through June 2023. (*Id.* at ¶ 6, 7.)

Following Preliminary Approval of the Settlement, Mr. Olsen reviewed the Class data that Defendants had provided the Claims Administrator. Kusel Declaration in Support of Final Approval at 21._. Upon review of that data, Mr. Olsen discovered that the data set lacked any Retry Fees incurred by Class Members from July 23, 2015, to January 1, 2017. Thereafter Plaintiff's Counsel brought the discrepancy to the attention of Defense Counsel. Defense Counsel conferred with their client and thereafter provided Verita with data files for the Pre-2017 time period. Kusel Decl. at 21, Verita Decl. at ¶ 4. Following that production, the total size of the class was determined to be 6871 and the total amount of Retry Fees assessed during the Class Period was assessed to be $758,635.-- (Vertia Decl. at ¶ 4)

## IV. TERMS OF THE SETTLEMENT

### A. Class Definition

The settlement class is defined as all current and former members of Defendant with consumer accounts, who were charged a Retry Fee during the Class Period of July 23, 2015, to March 31, 2024. (SA ¶ 41.) Excluded from the Settlement Class are: Workers, its parents, subsidiaries, affiliates, officers, and directors; DOES 1 through 5; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. (*Id.*) "Retry Fee" "means an overdraft or NSF fee charged on an ITEM when that ITEM had already resulted in at least one overdraft or NSF fee." (SA ¶ 37.)

### B. The Settlement Amount

As stated, this matter is proposed to be settled for $437,500. (SA at ¶ 44.) The Settlement Fund shall be paid into an account established by the Settlement Administrator within 10 days of the Court's entry of the Final Approval Order less the total amount that will be credited to Settlement

Class Members' accounts by Defendant as provided in ¶ 63(d)(ii)(1) of the Settlement Agreement. (SA ¶ 44.)

### C. Payments to Class Members

No class member will be required to make a claim to get paid. Rather, all class members will be paid by direct deposit into their accounts if they are current Workers members or will be mailed a check if they no longer have an account with Workers. (SA ¶ 63(d)(ii)(2).) For those class members who are paid by check, the class members shall have one-hundred and eighty (180) days to negotiate the check. (*Id.*)

### D. *Cy Pres* Distribution

Any checks distributed from the Settlement Fund left uncashed after 180 days shall be distributed *cy pres* within one year to the United Way. (SA ¶¶ 63, 64.)

## V. ARGUMENT

### A. The Legal Standards for Final Approval of a Class Action Are All Met

Rule 23(e) of the Federal Rules of Civil Procedure, which governs settlements of class action lawsuits, provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

Under the Federal Rules of Civil Procedure, class settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see Hill v. State Street Corp*., 2015 WL 127728, at *6 (D. Mass. 2015); *see also Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44, 45 (1st Cir. 2009); *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

According to the amended Rule 23(e)(2), a settlement is "fair, reasonable, and adequate" if: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided to the class is adequate, taking

into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equally to each other.

The factors in amended Rule 23(e)(2) are consistent with the factors already used by courts in the First Circuit prior to the Rule 23(e)(2) amendment, known as the "Grinnell factors" (initially set forth by the Second Circuit in *Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Health Benefits Fund v. First Databank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass 2009) (quoting *Grinnell*, 495 F.2d at 463); *see also New England Carpenters*, 582 F.3d at 44 n.13; *Hill*, 2015 WL 127728, at *6.

As explained below, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Grinnell* factors, demonstrate that the factors for final approval are all met in this case.

### 1. The Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

Rule 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate." As stated, the amount of the proposed settlement is $437,500. (*See* SA, ¶ 44.) The total damages incurred by the Class is $758,635.00 (Verita Decl. at ¶ 4.) This means that the proposed

settlement provides the Class with approximately 58% of their total damages and avoids substantial additional risk and costs.

Courts have determined that settlements are reasonable where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enters*., Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." (*Id*.)

Although Plaintiff believes the liability in this case is strong, it is possible that a trier of fact might agree that the language in the contracts at issue actually allowed Defendant to assess repeated fees in the manner it did. (Kusel Decl. ¶ 7.) Further, to continue with the case would be expensive for both sides. (*Id*.) For example, although Class Counsel believes the likelihood for certification is strong, there is always risk in getting consumer class actions certified, even the ones which have the strongest merits for certification. (*Id.*) Even if a motion for class certification were granted, Defendant likely would file a motion for summary judgment (*Id*.) Even if Plaintiff prevailed on these motions, there would have been an expensive trial, and regardless of which party prevailed, there likely would be appellate practice, further delaying any possible actual receipt of money by the class members, and further substantially increasing the number of attorney hours spent and the dollar amount spent on costs. (*Id.*) The cost to both sides involved would be substantial. (*Id*.)

With regard to expected duration, an otherwise strong case could last for a very substantial time if the proposed settlement were not approved and be extremely expensive to both sides. "Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. [T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig*., 248 F.R.D. 483, 497-98 (E.D. Mich. 2008).

"[I]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002)). For this reason, courts have consistently found that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Lazy Oil Co. v. Witco Corp*., 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

Finally, with regard to "Grinnell factor" three, "the stage of the proceedings and the amount of discovery completed," as demonstrated in Section II, *supra*., the case was vigorously contested, and meaningful discovery was performed, including an analysis of Defendant's database records by Plaintiff's database expert.

**2. The Settlement Was Negotiated at Arm's Length**

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length. There is a presumption that a negotiated settlement is within the range of reasonableness applies "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005).

Here, there is no doubt this occurred, as the settlement is the result of a compromise reached after arms-length negotiations, and significant discovery, and data analysis by Plaintiff's expert. (Kusel Decl. ¶¶ 5, 6.) As such, the presumption is that the Settlement is fair. *See City P'ship Co.*, 100 F.3d at 1043; *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 444 (E.D. Pa. 2008) ("parties have conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case … and reach a

reasonable settlement.”).

Courts have consistently found that “[g]iving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate, although the ultimate determination of the fairness of a partial settlement is left to the court.” *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007); Class Counsel are highly experienced in consumer class actions and have particular experience in NSF fee and overdraft fee class actions. (Kusel Decl. ¶¶ 11, 16.) They have investigated the issues raised in this action and favor the settlement. (Kusel Decl. ¶ 7.)

**3. Lack of Opt-outs by Class Members**

“*Grinnell* factor” number two is “the reaction of the class to the settlement.” A small percentage of objections and opt-outs constitutes strong evidence that a settlement is fair and reasonable. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999), *enforcement granted*, No. CIV.A. 97-40204-NMG, 2006 WL 8201933 (D. Mass. Sept. 19, 2006); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 347 (D. Mass. 2015). As of August 29, 2024, no class members have requested to be excluded from the class. (Verita Decl. ¶ 16.) Additionally, there have been no objections to the settlement. (Verita Decl ¶ 17.) The Settlement Class’s reaction here therefore provides additional strong support for approving the proposed settlement.

**4. The Other Factors Set Forth Rule 23(e)(2)**

As stated, Rule 23(e)(2), as amended, and relevant here, considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (iv) the equitable treatment of class members. *See* Rule 23(e)(2)(C)(ii), (iii), and (ii); Rule 23(e)(2)(D). Each of these considerations supports final approval of the Settlement.

Here, all class members will be paid by direct deposit into their accounts if they are current Workers Credit Union members or will be mailed a check if they no longer have an account with

Workers, with no need to make any claim whatsoever. (SA ¶ 63(d).)

With regard to equitable treatment of class members, all class members who do not opt-out will receive a *pro rata* distribution based on the amount of eligible Retry Fees they incurred. (Settlement Agreement, ¶ 63(d)(i)(1).) "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable." *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, *6 (D.D.C. Mar. 31, 2000); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) (approving class action settlement agreement containing *pro rata* distribution.)

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, as demonstrated by the contemporaneously filed declaration of the claims administrator Verita, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements. (Verita Decl., ¶¶ 7-15, and Exhibits.)

**B. The Proposed Settlement Class Should Be Finally Certified**

In granting preliminary approval, this Court already determined that the proposed settlement class is appropriate for certification. (ECF No. 67.) It is appropriate for this Court to now grant final certification of the Settlement Class upon reconsidering the submissions and conducting an analysis of the prerequisites established under Rule 23. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 67 (D. Mass. 2005). Class certification is proper if the proposed class, the proposed class representative, and the proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a) (1-4). In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least

one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b). When a plaintiff seeks class certification under Rule 23(b)(3), the representative must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem Products v. Windsor*, 521 U.S. 591, 615-16 (1997). Because Plaintiff meets all of the Rule 23(a) and 23(b)(3) prerequisites, certification of the proposed Class is proper.

**1. The Requirement of Numerosity Is Satisfied**

The first Rule 23 prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir.2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001).). Plaintiff's expert preliminarily determined the likely number of class members to be approximately 9,000. (Olsen Decl., at ¶ 8.) The Class list based on data provided by Workers included 30,429 current and former credit union members, and captured Retry Fees for 6,871 class members (Verita Decl. at ¶ 4.)

**2. The Requirement of Commonality Is Satisfied**

The second requirement for certification requires that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23(a)(2) "does not require that all questions of law or fact raised in the litigation be common[,]" and can be satisfied by even a "'single [common] question.'" *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 174 (D. Mass. 2012) (quoting *Dukes*, 131 S. Ct. 2541 at 2556.) Here, not only do there exist common questions of law or fact, but

common questions predominate over any individual ones. It is not disputed that the liability theory underlying the class claims involves a uniform NSF fee practice, and uniform contractual terms. Common questions include whether the contractual terms allow Defendant to assess repeat NSF fees for an individual item. Determination of the meaning of the language in the contracts at issue will resolve the allegations for the Class.

**3. The Requirement of Typicality Is Satisfied**

Rule 23 next requires that the class representative's claims be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). The "typicality requirement . . . is 'not highly demanding because the claims only need to share the same essential characteristics, and need not be identical.'" *Gonzalez v. XPO Last Mile, Inc.*, 579 F. Supp. 3d 252, 262 (D. Mass. 2022) (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 24-25 (D. Mass. 2003); *see also* 1 Newberg on Class Actions § 3.13, at 3- 76 (3d ed. 1992). A representative's claims need not be identical to class members' claims in order to be typical. *In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611, 615 (E.D. Pa. 1992), *citing Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir.1984), *cert. denied*, 470 U.S. 1060 (1985).

Plaintiff's claims here are not only typical of those of the other putative class members, but they are also essentially identical: Plaintiff was assessed the same sort of Retry Fees as the other class members, entered into the same uniform agreements as did other class members, and was assessed Retry Fees by the same automated software system in the same alleged improper manner as were other Class members. (Kusel Decl., ¶ 19.) Typicality is satisfied.

**4. The Requirement of Adequate Representation Is Satisfied**

The final Rule 23(a) prerequisite requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of two questions determines adequacy of representation: 1) does the named plaintiff have any conflicts of interest with prospective class members; and 2) is class counsel qualified,

experienced, and able to vigorously prosecute the interests of the class? *Duprey v. Connecticut Dept. of Motor Vehicles*, 191 F.R.D. 329, 337 (D. Conn. 2000). As with the typicality requirement, this element requires that the interests of the named plaintiff are aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members. *See Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 ("The adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'").

Class Counsel, Elaine S. Kusel of McCune Law Group, APC, and Christine M. Craig of Shaheen & Gordon, PA, have significant class action, litigation, and trial experience, are competent, and have been competent in representing the class. Both law firms representing the putative class have extensive experience in consumer class actions, and in particular, expertise in overdraft fee litigation. (Kusel Decl. ¶¶ 11, 16.) The interests of the named Plaintiff are not antagonistic to those of the other class members; in fact, their interests are wholly aligned because she was charged the same fees as other class members. (Kusel Decl. ¶ 20.) Further, she understands that she is pursuing this case on behalf of all class members similarly situated and understands that she has a duty to protect absent Class members. (*Id*.) The Class Representative took an active role in the litigation, by among other things, reviewing pleadings, searching for and providing discovery, and regularly conferring with counsel. (Kusel Decl. ¶ 19.)

**5. The Proposed Settlement Class also Satisfies Rule 23(b)(3)**

Once the prerequisites of Rule 23(a) have been met, a plaintiff must also demonstrate that he satisfies the requirements of Rule 23(b). To certify a class under Rule 23(b)(3), the plaintiff must show that (1) the common questions of law and fact predominate over questions affecting only

individuals and (2) the class action mechanism is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

**a. Common Questions of Law and Fact Predominate**

The predominance requirement questions whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "There is no mathematical or mechanical test for evaluating predominance.") Courts have routinely found common questions predominate where the claims relate to a common course of conduct. *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). Workers does not dispute engaging in the practice of charging repeat NSF fees on subsequent payment attempts for one particular item. The predominant issue is whether the contract permitted this. The determination of this predominating question would likely be dispositive of the case.

**b. This Class Action Is the Superior Method of Adjudication.**

Rule 23(b)(3) also requires that a certifying court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, it is undisputed that each class member's claim is relatively small, making it uneconomic for individuals to pursue these claims on their own. *Tardiff v. Knox Cty.*, 365 F.3d 1, 7 (1st Cir. 2004) (superiority met where class action is only "feasible" means for most of class recovery). As such, superiority is met, for the proposed Class, the only real choice is between a class action and no action.

## VI. FEES, COSTS, AND SERVICE AWARD

Class Counsel seek (1) reasonable attorney's fees in the amount of $133,097.00, (2) costs of $45,000.00, and (3) an incentive service award of $2500.00 for Kiomy Encarnacion in recognition of her contributions to the case and her services to the class members.

### A. Plaintiff's Counsel's Application for Fees, Costs, and Expenses

Under the terms of the Settlement Agreement, Class Counsel may apply for attorney's fees of up

to 33.33% of the Settlement Fund. (SA ¶ 63(a).) The Settlement Fund as defined in the Settlement Agreement equals $437,500.00. (SA ¶44.) This means that per the Settlement Agreement, Class Counsel could apply for as much as $145,818.75 in fees without objection by Defendant. (SA ¶ 63(a).) Nonetheless, Class Counsel is applying for $133,097.00 which is approximately 30% of the $437,500.00 Settlement Fund. This amount represents only 36% of Plaintiff Counsels' combined lodestar of $369,151.8. (Kusel Decl. at ¶8, 28.) This fee is reasonable in light of the complexity of the litigation, the degree of risk assumed by counsel, the amount of time and resources expended on the case, and the excellent result achieved for the class. A more detailed review of the work performed by Class Counsel is set forth in the Declaration of Elaine Kusel ("Kusel Decl.") submitted herewith. For the reasons set forth therein and herein, the Court should grant Class Counsel's application for attorney's fees, costs, and expenses.

### B. Plaintiff's Counsel Are Entitled to an Award of Attorney's Fees from the Common Fund

Federal courts recognize that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). The First Circuit gives district courts discretion to "calculate counsel fees either on a percentage of the fund ["POF"] basis or by fashioning a lodestar." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). While courts in the First Circuit may use the lodestar method alone or to check the reasonableness of a POF calculation, the POF basis is still preferred as being "less burdensome and 'better [approximating] the workings of the marketplace[.]'" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (quoting *Thirteen Appeals*, 56 F.3d at 306-7.) Specifically, the First Circuit has noted that:

> [U]sing the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement.... If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options -but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.

*Thirteen Appeals*, 56 F.3d at 307 (citations omitted).

Standard awards in the First Circuit and state courts in this district range from 20% - 33.33%. *See, e.g., Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 296 (1977) ("The court takes judicial notice that the plaintiff's counsel is able and experienced and that a one-third fee is not unusual in civil actions of this nature."); *Conant v. FMC Corp.*, No. 2:19-CV-00296-JDL (D. Me. Sept. 1, 2020) (approving as reasonable an award of attorney's fees of one-third of common settlement fund, which was $695,000, plus $20,649.30 in expenses, in class action); *Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-CV-00296-JAW, 2023 WL 167560, at *5 (D. Me. Jan. 12, 2023) ("a one-third contingent fee is common"), *Scamman v. Shaw's Supermarkets, Inc.*, No. BCD-CV-2018-09 (Super. Ct. Apr. 26, 2019) (approving as reasonable attorney's fee award of one-third of common fund); *O'Connor v. Oakhurst,* 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) (approving as reasonable an award of attorney's fees of one-third of common fund, or $1.67 million in fees, plus $50,000 in expenses, in class action); *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, 2016 WL 3072247, at *3-4 (D. Me. May 31, 2016) (awarding one-third fee class action); *Scovil v. FedEx Ground Package Sys., Inc.*, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014) (awarding one-third of common fund class action and citing multiple settlements in accord); *Kondash v. Citizens Bank, Nat'l Ass'n,* No. 18-CV-00288-WES-LDA, 2020 WL 7641785, at *5 (D.R.I. Dec. 23, 2020), report and recommendation adopted, No. CV 18-288 WES, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (approving one-third of class action settlement common fund); *Swack v. Credit Suisse First Bos., LLC*, No. 1:02-cv-11943-DPW, Dkt. No. 114 (D. Mass. Jul. 18, 2006) (awarding 33% of settlement fund.)

The one-third award is also common in the First Circuit in much larger cases as well. *See e.g., Roberts v. TJX Companies, Inc.*, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) (awarding 33% of $4.75 million settlement); *Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147 (D. Me. 2005) (awarding 33% of $2.3 million recovery); *Relafen*, 231 F.R.D. at 82 (approving one-third fee from class action settlement common fund of $67 million); *Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08-cv-10873 (D. Mass. Nov. 25, 2009) (approving one-third fee from $1.4 million recovery); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017) (approving fee award of one-third of 2.9 million because it mimics the market.) Here, Class Counsels' request of approximately 30% of the Settlement Fund falls within the range of reasonableness recognized by courts in this circuit.

Although the First Circuit prefers the percentage-of-the-fund approach, a lodestar analysis may be performed as a check to ensure that the percentage award is fair and reasonable. *Thirteen Appeals*, 56 F.3d at 307. Multipliers of between 1 and 2 are common in the First Circuit. *See Relafen*, 231 F.R.D. at 82 (approving a multiplier of 2.2 citing multipliers between 1-3 as common); *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 408 (D. Mass. 2008) ("the suggested multiplier of 1.97 is within the range that has been recognized as reasonable"); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 171 (D. Mass. 2015) (approving multiplier of 2); *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415, at *5 (D. Mass. May 20, 2015) (approving multiplier of 2.35); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (approving multiplier of 2.697).

Indeed, courts even approve multipliers significantly higher, establishing the reasonableness of Plaintiff's request. *See, e.g., In re AMICAS, Inc. S'holder Litig.*, 27 Mass.L.Rptr. 568, 2010 WL 5557444 (Mass. Super. Ct. Dec. 6, 2010) (Neel, J.) (applying a multiplier of five to fees incurred in shareholder litigation); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005)

(finding 6.96 multiplier reasonable under circumstances); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding 3.5 multiplier); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08- cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (3.9 multiplier on $272 million settlement); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. CIV.A. 05-11148PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (granting a multiplier of about 8.3 times lodestar).

The fact that Class Counsel's request represents 43% of their combined lodestar, even though multipliers are regularly approved further supports the reasonableness of the fee request.

### C. Plaintiff's Counsel Are Entitled to a Reimbursement of Expenses from the Common Fund

Regarding costs, Class Counsel have incurred in excess of $42,449.54 in costs to date and estimate they will incur additional costs to the time of final approval of this matter. In the motion for Preliminary Approval, Class Counsel stated they expected to incur expenses totaling $40,000 including further expert charges and settlement administration costs. As a result of the greater than anticipated costs, Class Counsel seek $50,000.00 in expenses, to cover further costs incurred to finalize the settlement. To the extent that total expenses are less than $50,000, Plaintiffs will refund the remaining portion to the Settlement Fund. (Kusel Decl. ¶ 31.) A detailed account of the costs incurred to date is annexed to the Kusel Declaration.

### D. The Class Representative Is Entitled to a Service Award from the Common Fund

Plaintiff is also moving for the Court to approve a service award to the proposed class

representative, Kiomy Encarnacion, of up to $2,500.00. Ms. Encarnacion communicated with Class Counsel extensively throughout the case; reviewed and gathered documents for Class Counsel; responded to formal written discovery; and, reviewed and approved of the proposed settlement in this matter. (Kusel Decl. ¶ 19.) A service award of $2,500.00 is well within the range of reasonable incentive payments within overdraft fee class actions. *See, e.g., Grenier v. Granite State Credit Union*, 344 F.R.D. 356 (D.N.H. 2023) Dkt. No. 51 at ¶¶ 8, 9 (granting $5,000 service awards to each class representative in overdraft fee class action); *Richard v. Glens Falls Nat'l Bank*, No. 120CV734BKSDJS, 2022 WL 3286551 (N.D.N.Y. July 22, 2022) Dkt. No. 72 at ¶ 16 (granting $15,000 service award in overdraft fee class action); *Roberts v. Capital One*, No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 2, 2020) Dkt. No. 199 at 11 (granting $10,000 service award in overdraft fee class action; *see also* 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) (citing a 2011 study in which the average incentive award was found to be $11,697, or $14,371 in 2021 dollars).

## VII. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court certify the class, and grant final approval of the settlement. Additionally, Class Counsel respectfully requests that the Court (i) award attorney's fees in the amount of approximately 30% ($133,097.00) of the $437,500.00 Settlement Fund, (ii) award $50,000.00, in reimbursement of expenses incurred by Plaintiff's Counsel; and (iii) and award $2,500.00 for the Class Representative's costs and expenses related to her representation of the Class.

Dated: August 30, 2024 Respectfully Submitted,

By: /s/ Richard D. McCune

Elaine S. Kusel, NJ Bar No. 319302020 (*pro hac vice*)
esk@mccunewright.com
**McCune Law Group, McCune Wright Arevalo Vercoski Kusel Weck Brandt, APC**

One Gateway Center, Suite 1500 Newark, NJ 07102
Telephone: (973) 888-1203
Facsimile: (909) 557-1275

Christine M. Craig, Esq., NH Bar No. 12842
**Shaheen & Gordon PA**
353 Central Ave, Ste 200
Dover, NH 03821

*Attorneys for Plaintiff Kiomy Encarnacion, and the Putative Class*

**CERTIFICATE OF SERVICE**

I certify that the foregoing Memorandum has been served upon all counsel of record via filing through Court ECF system.

*/s/ Richard D. McCune*
Richard D. McCune